## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL ALBEE, individually and derivatively on behalf of Aromatic Fusion, Inc. : | CIVIL ACTION |
| Plaintiff, : | |
| : | NO. |
| v. : | |
| ERIC ALBEE : | |
| and : | |
| WHITE BEAR TRADING COMPANY : | |
| Defendants : | |
| and : | |
| AROMATIC FUSION, INC. : | |
| Nominal Defendant. : | |

## COMPLAINT

Plaintiff, Paul Albee, by his attorneys, Semanoff Ormsby Greenberg & Torchia, LLC, hereby files this Complaint individually and derivatively on behalf of Aromatic Fusion, Inc., and in support thereof avers as follows.

## INTRODUCTION

1.      This is a case of breach of fiduciary duty and shareholder oppression by Eric Albee, the majority shareholder of Aromatic Fusion, Inc. (**"Aromatic Fusion"** or **"Company"**) against the sole minority shareholder, Paul Albee. As detailed in this Complaint, Eric Albee has blatantly diverted significant corporate opportunities to a directly competing business he established in Florida while not only ignoring his responsibilities to Aromatic Fusion, but in fact

taking specific actions designed to cripple and destroy it. This complete disregard for the fiduciary duties Eric Albee owes to Paul Albee and the Company is particularly egregious due to the fact that Eric Albee is Paul Albee's son.

## THE PARTIES

2.      Plaintiff Paul Albee (**"Paul"**) is an adult individual residing at 409 Sergeant Drive, Lambertville, NJ 08530.

3.      Defendant Eric Albee (**"Eric"**) is an adult individual residing at 640 NW 28th Court, Wilton Manors, FL 33311.

4.      Defendant White Bear Trading Co., LLC (**"White Bear"**) is a limited liability company existing under the laws of the State of Florida with an address of 1054-1056 N.E. 43rd Court, Oakland Park, FL 33334.

5.      White Bear is owned 50% by Eric and 50% by his partner Ryan Willits, a Florida real estate attorney and founder of Willits & Associates, P.A. in Boca Raton, Florida.

6.      Nominal Defendant Aromatic Fusion is a corporation organized and existing under the laws of the state of New Jersey with its principal place of business at 3185 Tucker Road, Bensalem, PA 19020.

## JURISDICTION, VENUE AND GOVERNING LAW

7.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) as the parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8.      The Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

9.      Venue is proper in this district because a substantial portion of the transactions and wrongs set forth in this Complaint occurred in the district. Further, the principal place of business of Aromatic Fusion of which Eric is the majority shareholder, is in this district.

10.     Aromatic Fusion is a New Jersey corporation and therefore New Jersey substantive law governs Plaintiff's claims.

## JURY DEMAND

11.     Plaintiff requests a jury trial on all causes of action.

## FACTUAL BACKGROUND

12.     Aromatic Fusion was incorporated in 2003 and is a leading supplier of fragrance concentrates, custom air care products, odor neutralizers as well as other products and related services.

13.     Eric owns 61% of the shares of Aromatic Fusion and is the majority shareholder.

14.     Paul owns 39% of the shares of Aromatic Fusion and is the minority shareholder.

15.     In addition to being the majority shareholder, Eric is a director and an officer of Aromatic Fusion.

16.     Initially, Eric lived in New Jersey and worked at Aromatic Fusion's corporate headquarters in Bensalem, PA. At that time, Eric was integrally involved in all aspects of Aromatic Fusion's business and had access to and knowledge of all of the Company's activities including the identity and needs of its customers; the identity of and the relationships with its vendors; sales methods, targets and goals; marketing techniques and objectives; production methods; products; financial data; and complete access to all manner of proprietary information and Company trade secrets.

17.     At that time the Company was successful and profitable. In 2013 the Company had sales in excess of $1,134,000.

18.     In February 2014, Eric purchased a home in Florida and permanently relocated there.

19.     Prior to Eric's relocation to Florida, Aromatic Fusion's bank refused to accept an out-of-state residence as collateral for the Company's working capital loan, so Paul agreed to provide the home owned by he and his wife (Eric's mother) as collateral for the loan.

20.     Additionally, the Company took out a second working capital loan through the Small Business Administration that is collateralized by an investment account owned by Paul and his wife.

21.     As a result of these loans, a closure of the Company puts Paul and his wife's home in jeopardy and could result in their bankruptcy.

22.     The closure of the Company would also result in the Company's remaining employees' loss of employment and their livelihoods.

23.     Further, as a result of Eric's disregard for the Company, Paul has been forced to infuse the Company with his own money in excess of $50,000 for raw materials, utilities, salaries, rent, machine parts and repairs necessary for Aromatic Fusion's manufacturing process.

24.     In February, 2015, Eric formed aroma43, which initially sold candles and other fragrance-related products that were manufactured from Aromatic Fusion solid gel technologies and which utilized molds and figures designed by Aromatic Fusion. Over time, aroma43 added additional products to its line which were developed by and designed for Aromatic Fusion, and which utilize Aromatic Fusion's technology. These products were all introduced as aroma43 products and sold for the exclusive benefit of aroma43.

25.     In 2016, Eric founded E. Albee Sales for the sale and distribution of ExpressScent car air fresheners, BugStorm Shield and the Smoke Out Cube, all of which were manufactured by Aromatic Fusion. Sales for E. Albee Sales have been reported in excess of $55,000 for 2016,

however there are no records of any Aromatic Fusion products purchased by or orders placed by E. Albee Sales.

26.     In October, 2016, Eric formed White Bear with his partner Ryan Willits.

27.     Among other activities, White Bear markets and sells aroma43 products. The aroma43 website states, "aroma43 is a brand of White Bear Trading Co., LLC".

28.     An egregious diversion of a corporate opportunity and significant profits from Aromatic Fusion to White Bear involves a company called Homeworx. In 2016, Aromatic Fusion began working with Homeworx, a new customer at the time, which sells candles and other home air fresheners under the name "Homeworx by Harry Slatkin."

29.     Significant time and expenses were incurred by Aromatic Fusion to develop the relationship with Homeworx, which ultimately resulted in a contractual relationship pursuant to which Aromatic Fusion was to provide hundreds of thousands of dollars' worth of products to Homeworx.

30.     Numerous documents exist that demonstrate Eric's efforts in connection with the relationship with Womeworx were taken on behalf of Aromatic Fusion, and that the anticipated sales were intended to be for the benefit of Aromatic Fusion.

31.     Nevertheless, unbeknownst to Aromatic Fusion at the time, Eric's intention was to divert all of the Homeworx sales to White Bear.

32.     At all times, White Bear was aware of the contractual relationship between Homeworx and Aromatic Fusion. White Bear nonetheless, without cause or justification, tortiously interfered with Aromatic Fusion's contractual relationship with Homeworx.

33.     White Bear did in fact divert the Homeworx business away from Aromatic Fusion to itself. The diversion of business from Aromatic Fusion to White Bear has so far resulted in lost profits to Aromatic Fusion in excess of $600,000.

34.     When Aromatic Fusion investigated the diversion of the Homeworx sales to White Bear, it determined that Eric, in an effort to cover up his malfeasance, had removed the written contracts and documents related to Homeworx from Aromatic Fusion's office, and took a laptop utilized by the Company to maintain Aromatic Fusion financial and customer information.

35.     As a result of this diversion of this corporate opportunity, White Bear has benefitted immensely from the significant time, costs and administrative expenses incurred by Aromatic Fusion to research and develop the products sold to Homeworx. This has permitted aroma43 and White Bear to experience rapid growth and profitability that they would not have ordinarily achieved as start-up companies.

36.     While aroma43 and White Bear have benefited from this rapid growth as a result of its theft of Aromatic Fusion's corporate opportunities, Aromatic Fusion has suffered catastrophic losses in sales that have rendered it nearly insolvent.

37.     A comparison of Aromatic Fusion's sales with reported sales figures of aroma43 and White Bear illustrates the effect of Eric's wrongful conduct and diversion of Aromatic Fusion's corporate opportunities:

|  | Aromatic Fusion Sales | aroma43 Sales | White Bear Sales |
|---|---|---|---|
| 2017 | $927,016 |  |  |
| 2018 | $719,480 | $1,800,000 |  |
| 2019 | $467,218 | $1,000,000 |  |
| 2020 | $514,143 | $3,000,000 | $983,000 |

38.     Since June 2017, Eric has performed no services of any kind for Aromatic Fusion and does nothing more than interfere with the Company's ability to effectively operate.

39.     On August 9, 2019 Eric resigned as a paid employee of Aromatic Fusion, although he remains its majority shareholder and has the ability to control of the operations of the Company.

40.     Not only does Eric perform no services for Aromatic Fusion and devote all of his time and efforts to aroma43 and White Bear, he actively seeks to cause harm to Aromatic Fusion.

41.     In or about August 2012, Aromatic Fusion executed a non-disclosure agreement with AFAB Industrial Services, Inc. (**"AFAB"**) that would permit Aromatic Fusion to utilize AFAB's trade secret materials in the manufacture of certain of its products. Notwithstanding the agreement, a breach of which subjects Aromatic Fusion to significant monetary damages, Eric knowingly and materially breached the agreement by disclosing AFAB's trade secret formulations to Chinese factories with whom Eric has a business relationship, thereby destroying the uniqueness of the formulation and causing significant harm to AFAB and potential liability to Aromatic Fusion. Further, Eric's disclosure of AFAB's trade secret formulations have allowed a Chinese company to become a major competitor in the automotive air freshener market on a world-wide scale.

42.     Prior to February 3, 2021, Eric sent a letter to Chevron Phillips, a vital business partner of Aromatic Fusion, and falsely accused it of misappropriating Aromatic Fusion's technology and threatening civil and criminal actions against it. Eric sent this letter without informing anyone at Aromatic Fusion and with the intent of destroying Aromatic Fusion's relationship with Chevron Phillips.

43.     The Company was made aware of the letter by Chevron Phillips when Chevron Phillips terminated its business relationship with Aromatic Fusion, which has caused incalculable harm to the Company.

44.     On March 18, 2021, Aromatic Fusion sent a letter to Eric on behalf of Paul putting him on notice of his wrongful conduct including his letter to Chevron Phillips, the establishment of aroma43 and White Bear, and the diversion of Aromatic Fusion business to White Bear. The letter, which sought an amicable resolution, was ignored by Eric and additional communications with Eric to resolve this matter would be futile.

45.     In accordance with N.J.S.A. 14A:3-6.3, more than 90 days have expired since the date of the demand upon Eric, which entitles Paul to commence this derivative proceeding.

**COUNT I**
**Plaintiff v. Eric Albee**
<u>**Shareholder Oppression**</u>

46.     Plaintiff incorporates each preceding paragraph as if set forth at length herein.

47.     By reason of his position as majority shareholder and his ability to control the business and corporate affairs of the Company, Eric owes the Company and Paul a fiduciary duty to manage the Company in a fair, honest and equitable manner. Eric was and is required to act in furtherance of the best interests of the Company and its shareholders equally, and not in furtherance of his own personal interest or benefit.

48.     As the sole minority shareholder, Plaintiff fairly and adequately represents the interests of the Company in enforcing and prosecuting its rights.

49.     The focus of New Jersey's Oppressed Minority Shareholder Statute, N.J.S.A 14A:12-7 (**"Minority Shareholder Statute"**) is to remedy abuse and oppression against minority shareholders by those in control of closely held corporations.

50.     As a result of Eric's vexatious conduct as described above, Eric is liable to Paul under the Minority Shareholder Statute for the damages Paul has suffered from Eric's shareholder oppression.

51.     If the court determines that Eric has acted arbitrarily, vexatiously, or otherwise not in good faith, it may award reasonable expenses, including counsel fees incurred in connection with the action, to Paul. N.J.S.A 14A:12-7(7).

WHEREFORE, Plaintiff, Paul Albee, in his individual capacity, requests the court enter judgment in his favor against Defendant Eric Albee in an amount to compensate Plaintiff for the losses suffered as a result of Defendant's shareholder oppression, plus attorneys' fees, court costs, pre-judgment interest and such other equitable relief this Court deems just and proper including, but not limited to, the appointment of a custodian for the corporation as authorized by N.J.S.A. 14A:12-7(4) and the repurchase of Eric's shares by the corporation as authorized by N.J.S.A. 14A:12-7(8).

## COUNT II
### Plaintiff v. Eric Albee
### Breach of Fiduciary Duty to Minority Shareholder

52.     Plaintiff incorporates each preceding paragraph as if set forth at length herein.

53.     New Jersey law, including pursuant to the Minority Shareholder Statute, imposes a fiduciary duty upon a majority shareholder to act with the utmost good faith and loyalty in transacting corporate affairs.

54.     Eric, as majority shareholder owes Paul, as minority shareholder, fiduciary duties including the highest obligation of good faith, fair dealing, loyalty and due care.

55.     Eric materially breached the fiduciary duty owed to Paul by virtue of the actions described in this Complaint.

56.     Eric's wrongful conduct was not an exercise of good faith business judgment. To the contrary, it was specifically designed to benefit Eric and White Bear and to harm Paul.

57.     As a direct and proximate result of Eric's breach of fiduciary duties owed to Paul, Paul has suffered significant financial damages.

WHEREFORE, Plaintiff, Paul Albee, in his individual capacity, requests the court enter judgment in his favor against Defendant Eric Albee in an amount to compensate Plaintiff for the losses suffered as a result of Defendant's breach of fiduciary duty, plus attorneys' fees, court costs, pre-judgment interest and such other equitable relief this Court deems just and proper, including, but not limited to, the appointment of a custodian for the corporation as authorized by N.J.S.A. 14A:12-7(4) and the repurchase of Eric's shares by the corporation as authorized by N.J.S.A. 14A:12-7(8).

## COUNT III
### Plaintiff, Derivatively on Behalf of Aromatic Fusion, Inc.  v. Eric Albee
### Breach of Fiduciary Duty to Aromatic Fusion, Inc.

58.     Plaintiff incorporates each preceding paragraph as if set forth at length herein.

59.     New Jersey law, including pursuant to the Minority Shareholder Statute imposes a fiduciary duty upon a majority shareholder, a director and an officer to act with the utmost good faith and loyalty in transacting corporate affairs.

60.     Eric as majority shareholder, director and officer owes Aromatic Fusion fiduciary duties including the highest obligation of good faith, fair dealing, loyalty and due care.

61.     Eric materially breached the fiduciary duty owed to Aromatic Fusion by virtue of the actions described herein.

62.     Eric's wrongful conduct was not an exercise of good faith business judgment. To the contrary, it was specifically designed to benefit Eric and White Bear and to specifically harm Aromatic Fusion.

63.     As a direct and proximate result of Eric's breach of fiduciary duties owed to Aromatic Fusion, the Company has suffered significant financial damages.

64.     Pursuant to N.J.S.A. 14A:3-6.7, in a derivative action Plaintiff is entitled to have its attorneys' fees and expenses paid by the corporation if the court finds that this proceeding has resulted in substantial benefit to the corporation.

WHEREFORE, Plaintiff, Paul Albee, in his derivative capacity on behalf of Aromatic Fusion, Inc., requests the court enter judgment in his favor against Defendant Eric Albee in an amount to compensate Aromatic Fusion for the losses suffered as a result of Eric's breach of fiduciary duty, plus attorneys' fees,  court costs, pre-judgment interest and such other equitable relief this Court deems just and proper.

## COUNT IV
### Plaintiff, Derivatively on Behalf of Aromatic Fusion, Inc. v. White Bear Trading Company
### Tortious Interference with Contractual Relations

65.     Plaintiff incorporates each preceding paragraph as if set forth at length herein.

66.     As described above, at all times, White Bear was aware of the contractual relationship between Homeworx and Aromatic Fusion.

67.     White Bear nonetheless, without cause or justification, tortiously interfered with Aromatic Fusion's contractual relationship with Homeworx.

68.     As a direct and proximate result of White Bear's tortious interference with Aromatic Fusion's contractual relations with Homeworx, Aromatic Fusion has suffered significant financial damages.

69.     Pursuant to N.J.S.A. 14A:3-6.7, in a derivative action Plaintiff is entitled to have its attorneys' fees and expenses paid by the corporation if the court finds that this proceeding has resulted in substantial benefit to the corporation.

WHEREFORE, Plaintiff, Paul Albee, in his derivative capacity on behalf of Aromatic Fusion, Inc., requests the court enter judgment in Aromatic Fusion's favor against Defendant White Bear Trading Company, LLC in an amount to compensate Aromatic Fusion for the losses suffered as a result of White Bear's tortious interference with Aromatic Fusion's contractual relations with Homeworx.

## COUNT V
**Plaintiff, Derivatively on Behalf of Aromatic Fusion, Inc. v. White Bear Trading Company**
**Unjust Enrichment**

70.     Plaintiff incorporates each preceding paragraph as if set forth at length herein.

71.     White Bear has benefitted immensely from the significant time, costs and administrative expenses incurred by Aromatic Fusion to research and develop the products sold to Homeworx.

72.     White Bear received the benefits of Aromatic Fusions efforts by being paid significant sums that were wrongfully diverted to it by Eric.

73.     Further, Eric's wrongful actions have permitted aroma43 and White Bear to experience rapid growth and profitability that they would not have ordinarily enjoyed as start-up companies.

74.     As a result of the actions described above, White Bear has been unjustly enriched.

75.     Pursuant to N.J.S.A. 14A:3-6.7, in a derivative action Plaintiff is entitled to have its attorneys' fees and expenses paid by the corporation if the court finds that this proceeding has resulted in substantial benefit to the corporation.

WHEREFORE, Plaintiff, Paul Albee, in his derivative capacity on behalf of Aromatic Fusion, Inc., requests the court enter judgment in Aromatic Fusion's favor against Defendant

White Bear Trading Company, LLC in an amount to compensate Aromatic Fusion for White Bear's unjust enrichment.

Respectfully submitted,

SEMANOFF ORMSBY
GREENBERG & TORCHIA, LLC

BY: _____
      MICHAEL J. TORCHIA, ESQUIRE
      STEPHEN C. GOLDBLUM, ESQUIRE
      2617 Huntingdon Pike
      Huntingdon Valley, PA 19006
      (215) 887-0200 Telephone
      mtorchia@sogtlaw.com
      sgoldblum@sogtlaw.com
      *Attorneys for Plaintiff*

## **VERIFICATION**

I, Paul Albee, Plaintiff in this action, attest that I am have been shareholder of Aromat
Fusion, Inc. at all times relevant to the claims in this Complaint. The statements made in the th
Complaint are true and correct to the best of my knowledge, information and belief. I understan
that false statements herein are subject to penalties relating to unsworn falsification t
authorities.

_____
PAUL ALBEE

DATE: _SEPT. 1, 2021_