IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL ALBEE, Individually and Derivatively on behalf of Aromatic Fusion, Inc. | :<br>:<br>: CIVIL ACTION<br>: |
| v. | :<br>:<br>: NO. 21-3984 |
| ERIC ALBEE, WHITE BEAR TRADING COMPANY and AROMATIC FUSION, INC., | :<br>:<br>: |

## **MEMORANDUM**

**Chief Judge Juan R. Sánchez**                                                                                              **July 19, 2022**

Plaintiff Paul Albee and third-party defendants Mary Ann Albee, Sandra Albee Keeley and P3n Technology move to dismiss defendant Eric Albee's amended counterclaim and third-party complaint pursuant to Fed. R. Civ. P. 12(b)(6). Because both the amended counterclaim and amended third-party complaint lack sufficient factual allegations to satisfy the necessary pleading requirements under Rule 12(b)(6), the motion to dismiss is granted with leave to amend.

**FACTUAL BACKGROUND**

Aromatic Fusion, Inc. was incorporated in 2003 and is a leading supplier of fragrance concentrates, odor neutralizers and other air care products from its headquarters in Bensalem, PA. Eric Albee ("Eric"), a director and officer of Aromatic Fusion, owns 61% of the shares; his father, Paul Albee ("Paul"), owns the other 39%. Aromatic Fusion was profitable, with sales in excess of $1.134 million in 2013. (Compl. ¶ 17).

In 2014, Eric permanently moved to Florida. The working capital loan for Aromatic Fusion did not accept out-of-state residences as collateral so Paul and his wife, Mary Ann Albee, Eric's

mother, agreed to use their home as collateral for the loan. Additionally, Paul and Mary Ann collateralized a second, working capital loan for the company through the Small Business Association with an investment account which they owned. (Compl. ¶¶ 19-21).

In February 2015, Eric formed aroma43, which sold candles, fragrances and other products that were manufactured and designed using Aromatic Fusion's solid gel technologies, and molds and figures designed by Aromatic Fusion. (Compl., ¶ 24). Over time, aroma43 added and introduced several additional products to its line which had originally been developed for Aromatic Fusion using Aromatic Fusion's technology. *Id.* In 2016, Eric founded two additional entities: E. Albee Sales, which sold and distributed Express Scent car air fresheners, Bug Storm Shield and the Smoke Out Cube, all of which were manufactured by Aromatic Fusion; and White Bear Trading Company ("White Bear"), which was formed with a partner, Ryan Willits. White Bear, in addition to aroma43, also markets and sells aroma43 products utilizing Aromatic Fusion technology and resources, which are alleged to have been sold for the exclusive benefit of aroma43, to the detriment of Aromatic Fusion. (Compl., ¶¶ 26-27).

In 2016, Aromatic Fusion developed a contractual relationship with Homeworx, a company which sells candles and other home air fresheners, pursuant to which Aromatic Fusion was to provide hundreds of thousands of dollars' worth of products to Homeworx. (Compl. ¶ 29). Unbeknownst to Aromatic Fusion, however, Eric began diverting the Homeworx business away from it to White Bear, resulting in lost profits to Aromatic Fusion of at least $600,000. (Compl. ¶¶ 30-35). Eric has performed no work for Aromatic Fusion since June 2017; he resigned as a paid employee of the Company on August 9, 2019. (Compl., ¶¶ 38-39). Eric is, however, still the majority shareholder and retains the ability to control the operations of Aromatic Fusion. *Id.*

On September 7, 2021, Paul filed this action on his own behalf and derivatively on behalf of Aromatic Fusion against Eric and White Bear for shareholder oppression, breach of fiduciary duty, tortious interference with contractual relations, and unjust enrichment.  In response, Eric filed an answer denying the allegations against him together with a counterclaim against Paul and a third-party complaint against his mother, Mary Ann, his sister, Sandra Albee Keeley ("Sandra") and P3n Technology, Inc. ("P3n"), a corporation alleged to be wholly owned by Paul.  Eric's counterclaim asserts claims on behalf of himself and Aromatic Fusion against Paul for breach of fiduciary duty/duty of loyalty, tortious interference with existing and prospective contractual relations, embezzlement/fraudulent conversion, violations of the Federal Defense of Trade Secrets Act and Pennsylvania Uniform Trade Secrets Act, and seeking the corporate dissolution of Aromatic Fusion.  In his third-party complaint, Eric endeavors to state causes of action against his mother, sister, and P3n for aiding and abetting Paul's breach of fiduciary duty/duty of loyalty, tortious interference with existing and prospective contractual relationships, embezzlement/fraudulent conversion and for violations of the Federal and Pennsylvania Trade Secrets Acts. By the motion now before the Court, Paul and the third-party defendants assert Eric's amended counterclaim and third-party complaint are properly dismissed pursuant to Rule 12(b)(6).

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss a complaint may be filed on the grounds that it "fail[s] to state a claim upon which relief can be granted." To survive such a motion, the complaint must "state a claim to relief that is plausible on its face," and contain enough facts to "nudge [the plaintiffs'] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts must give a complaint's factual allegations the presumption of truth and draw reasonable inferences in favor of the non-moving

part(ies). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 921, n.1 (3d Cir. 2015). However, Courts do not have to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* A claim is facially plausible when the facts alleged in the complaint allow a court to draw a reasonable inference that the defendant is liable. *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 604 (3d Cir. 2015).

**DISCUSSION**

As noted, Eric's amended counterclaim and amended third-party complaint endeavor to plead causes of action for breach of fiduciary duty/breach of duty of loyalty, tortious interference with contractual relations, embezzlement/fraudulent conversion, and for violations of the Defense of Trade Secrets Act and the Pennsylvania Uniform Trade Secrets Act, as well as aiding and abetting breach of fiduciary duty. 18 U.S.C. § 1836, *et seq.*; 12 Pa. C.S.A. § 5301, *et. seq.*

To establish a breach of fiduciary duty under Pennsylvania law, a plaintiff must first establish that a "fiduciary or confidential relationship existed" between two parties. *Baker v. Fam. Credit Counseling Corp.*, 440 F. Supp. 2d 392, 414-15 (E.D. Pa. 2006) (discussing that this relationship exists when someone is in a position "of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest"). Next, the plaintiff must establish the elements of a breach of fiduciary duty: (1) [t]hat the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) [t]hat the plaintiff suffered injury; and (3) [t]he defendant's failure to act solely for the plaintiff's benefit was a real factor bringing about plaintiff's injuries." *Id.* Also, Pennsylvania law dictates that agents to a company owe that company a duty of loyalty. *See Synthes, Inc. v. Emerge Med. Inc.*, 25 F. Supp. 3d 617, 667 (E.D. Pa. 2014) (holding that an agent's "specific duties of loyalty include a duty to refrain from competing with the principal and. . . a

4

duty to not use property or confidential information of the principal for the agent's own purpose or those of a third party."). To establish a tortious interference with an existing or prospective contract under Pennsylvania law, a plaintiff must show "(1) an actual or prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damages resulting from the defendant's conduct." *Perma-Liner Indus., Inc. v. U.S. Sewer & Drain, Inc.*, 630 F. Supp. 2d 516, 524 (E.D. Pa. 2008).  For a prospective contract, plaintiffs must establish "an objectively reasonable probability that a contract will come into existence." *Mifflinburg Telegraph, Inc. v. Criswell*, 277 F. Supp. 3d 750, 797 (M.D. Pa 2017); *see also Gen. Sound Tel. Co., Inc., v. AT&T Comms., Inc.*, 654 F. Supp. 1562, 1565 (E.D. Pa. 1987) (holding that an existing business relationship where an opportunity to bid on a contract existed is insufficient to be considered a prospective contract under Pennsylvania law). Failing to identify "what contractual relationships were threatened" or not identifying "the type of contracts allegedly harmed" warrants a dismissal of the claim. *See Centennial Sch. Dist. v. Indep. Blue Cross*, 885 F. Supp. 683, 688 (E.D. Pa. 1994).

      Paul's argument for dismissal of the breach of fiduciary duty/duty of loyalty and tortious interference claims is well taken. For one, Eric fails to allege any details or provide any information into what competing entities Paul purportedly entered into "personal contracts" with, when they were negotiated or what services are alleged to have been provided. (Counterclaim ¶¶ 28-29). Eric also does not allege the kind of harm suffered by Aromatic Fusion as a result of these "personal contracts," nor does he identify any customers that were "diverted" by Paul from Aromatic Fusion. In short, no customer identities or dates of incidents were provided. Further, Eric's Counterclaim and Response are devoid of the description of a single specific patent owned by Paul that he

5

allegedly used to generate compensation for corporate entities other than Aromatic Fusion. These missing facts make Eric's claims against Paul for breach of fiduciary duty and duty of loyalty legally insufficient.

The claims for tortious interference with existing and prospective contractual relationships are also properly dismissed for the same reason. Again, the amended counterclaim fails to identify any existing contracts held by Aromatic Fusion or White Bear with which Paul interfered. Instead, the amended counterclaim simply alleges that "Paul directly [and] purposely interfered with present and future contractual relations [with] both Aromatic Fusion and White Bear" and that these actions "have caused "substantial damages to Aromatic Fusion and White Bear." (Counterclaim ¶ 35-36). No further details are pled and without anything more than these conclusory allegations, the claims for tortious interference with existing and prospective contractual relationships cannot stand.

The embezzlement/fraudulent conversion claim also fails because it too is nothing more than a broad accusation without any supporting facts. Under Pennsylvania law, conversion is "the deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." *Fenton v. Balick*, 821 F. Supp. 2d 755, 760 (E.D. Pa. 2011). Conversion can occur by "(1) acquiring possession of property with the intent to assert a right to it adverse to the owner; (2) transferring the property and therefore depriving the owner of control; (3) unreasonably withholding possession of the property from the one who has the right to it; and (4) misusing or seriously damaging the property in defiance of the owner's rights." *Id.* Here, no facts exist to support any of these four possibilities for conversion to occur. This claim is also properly dismissed as it fails to comport with the *Twombly* pleading standards.

The Court also finds dismissal of the claims for violation of the Federal Defense of Trade Secrets Act ("DTSA") and the Pennsylvania Uniform Trade Secrets Act ("PUTSA") to be appropriate because no trade secrets were identified in the challenged pleadings. To state a claim under the DTSA, which has a private right of action, plaintiffs must show "(1) they own a trade secret and (2) that the defendant misappropriated the trade secret." *Herley Indus., Inc. v. R Cubed Eng'g, LLC*, 2021 WL 229322, at *3 (E.D. Pa. Jan. 22, 2021). Similarly, a claim brought under the PUTSA requires "(1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret, in violation of that confidence; and (4) harm to the plaintiff." *Ecosave Automation, Inc. v. Del. Valley Automation, LLC*, 540 F. Supp. 3d 491, 500 (E.D. Pa. 2021). Both DTSA and PUTSA define "trade secret" similarly, providing four factors for evaluating putative trade secrets: "(1) The owner used "reasonable means" to keep the information secret; (2) The information derives actual or potential "independent economic value" from being secret; (3) The information is not "readily ascertainable by proper means"; and (4) others, who cannot access the information, would derive "economic value from its disclosure or use." *Herley Indus.*, 2021 WL 229322 at *4 (citing 18 U.S.C. § 1839(3)). Both define misappropriation as "'the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;' or the 'disclosure or use' of a trade secret without the consent of the owner." *Teva Pharmas. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 674 (E.D. Pa. 2018) (citing 18 U.S.C. § 1839(5)(A)-(B)). Courts generally agree that trade secrets need not be disclosed in detail in a complaint alleging misappropriation because this would result in the public disclosure of the purported trade secret, but as a trade secret can be "any formula, pattern, devise or compilation of information which is used in one's business and which gives an opportunity to obtain an advantage over competitors who do not know or use it," some

7

allegation of novelty is necessary. *See Pennfield Precision, Inc. v. EF Precision, Inc.*, 2000 WL 1201381 at *10 (E.D. Pa. Aug. 15, 2000).

Here, while the standard to allege a trade secret violation is liberal, the pleadings at issue do not allege any facts to suggest that a violation occurred at all. Eric alleges only in conclusory fashion that Paul "misappropriated trade secrets relating to formulas, compounds, methods, systems, processes, and formulations that he knew were developed and/or owned and protected by his employer." (Counterclaim ¶ ¶ 52, 62). These averments provide no information about what trade secrets were allegedly disclosed, to whom they were revealed or how that revelation was made, how they were acquired, or how they may have otherwise been misappropriated. These missing facts render these claims also legally insufficient.

The claim for Paul's removal as an operating employee of Aromatic Fusion is also properly dismissed given Eric's failure to allege that Paul engaged in any wrongful conduct. A court "may entertain proceedings for the. . . dissolution of [a] corporation when. . . : (1) [t]he acts of the directors or those in control of the corporation, are illegal, oppressive or fraudulent. . . (2) [t]he corporate assets are being misapplied or wasted. . . [or] (3) [t]he directors are deadlocked in the direction of the management of the business and affairs of the corporation and the shareholders are unable to break the deadlock and … irreparable injury to the corporation is being suffered or is threatened by reason thereof." 15 Pa. Cons. Stat. Ann. § 1981. Here, the "wrongdoing as aforesaid" that Eric claims supports the corporate dissolution of Aromatic Fusion is not adequately supported by the facts. (Counterclaim ¶ 67). As noted, Eric has not plead adequate facts to survive a motion to dismiss any of his other claims; therefore, wrongdoing sufficient to warrant corporate dissolution has not been pled with respect to Paul and the claim that Paul should be removed as an operating employee/director of Aromatic Fusion also fails to satisfy the *Twombly* threshold.

Finally, the Court likewise finds all of the claims raised against third-party defendants Mary Ann, Sandra, and P3n in the third-party complaint to be legally insufficient and properly dismissed in their entirety because they mirror the claims asserted in the counterclaim against Paul. The third-party defendants do not owe a fiduciary duty to Aromatic Fusion. In the absence of a valid claim against Paul for breaching his fiduciary duty and tortiously interfering with contractual relations the third-party defendants cannot be held liable for aiding and abetting him in doing so. This same analysis applies with respect to the claims against the third-party defendants for embezzlement/fraudulent conversion, and violations of the DTSA and PUTSA. For these reasons, the third-party complaint is likewise dismissed in its entirety.

**CONCLUSION**

For the reasons outlined above, Defendant Eric Albee's counterclaim and third-party complaint are dismissed. However, the Court recognizes it is possible that Defendant may be able to allege sufficient plausible facts to state valid causes of actions against the movants. For this reason, he shall be given leave to replead and file a final amended counterclaim and/or third-party complaint within twenty-one (21) days.

An Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
_____
Juan R. Sánchez,    C.J.