# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL ALBEE, Individually and derivatively On behalf of Aromatic Fusion, Inc. | : | |
| Plaintiff | : | **CIVIL ACTION** |
| v. | : | |
| ERIC ALBEE | : | No. 21-cv-3984 PBT |
| and | : | |
| WHITEBEAR TRADING COMPANY | : | |
| Defendants | : | **JURY TRIAL DEMANDED** |
| and | : | |
| AROMATIC FUSION. INC. | : | |
| Nominal Defendant | : | |

| | |
|---|---|
| ERIC ALBEE and AROMATIC FUSION INC. | : |
| Counterclaim Plaintiffs | : |
| v. | : |
| PAUL ALBEE | : |
| Counterclaim Defendant | : |

| | |
|---|---|
| ERIC ALBEE and AROMATIC FUSION INC. | : |
| Third Party Plaintiffs | : |
| v. | : |
| MARY ANN ALBEE | : |
| and | : |
| SANDRA ALBEE KEELEY | : |
| and | : |
| P3n TECHNOLOGY INC. | : |
| Third Party Defendants | : |

---

## DEFENDANTS' AMENDED ANSWER TO COMPLAINT WITH AMENDED AFFIRMATIVE DEFENSES, SECOND AMENDED COUNTERCLAIMS AND SECOND AMENDED THIRD-PARTY COMPLAINT

Defendants, Eric Albee ("Eric"), White Bear Trading Company ("White Bear") and Aromatic Fusion, Inc. ("Aromatic Fusion" or the "Company") (collectively, the "Defendants"), by their attorneys, Spector Gadon Rosen Vinci, P.C., hereby file the following Second Amended Answers to each of the numbered paragraphs of the Complaint of Paul Albee filed individually and derivatively on behalf of Aromatic Fusion, as well as assert Second Amended Affirmative Defenses, and Second Amended Counterclaims on behalf of Etic Albee and Aromatic Fusion against Paul Albee and a Second Amended Third-Party Complaint against Paul Albee's wholly owned, company P3n Technology, his wife Mary Ann Albee and his daughter Sandra Albee Keeley. [1]  In support thereof, Defendants aver as follows:

| | | |
|---|---|---|
| **PAUL ALBEE, Individually and derivatively on behalf of Aromatic Fusion, Inc.** | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| **v.** | : | |
| **ERIC ALBEE** | : | **No.  21-cv-3984 PBT** |
| **and** | : | |
| **WHITEBEAR TRADING COMPANY** | : | |
| **Defendants** | : | |
| **and** | : | **JURY TRIAL DEMANDED** |
| **AROMATIC FUSION. INC.** | : | |
| **Nominal Defendant** | : | |

## AMENDED ANSWER OF ERIC ALBEE, WHITE BEAR TRADING COMPANY AND AROMATIC FUSION, INC.

1.    Denied. Strict proof thereof is demanded.

2.    Admitted

3.    Admitted.

---

[1] No changes have been made to either the filed Amended Answer or Amended Affirmative Defenses. Only the Counterclaims and Third-Party Complaint have been amended.

4.      Admitted in part; denied in part.  It is admitted only that White Bear is a limited liability company under the laws of the State of Florida.  The remaining allegations in this paragraph 4 of the Complaint are specifically denied and strict proof thereof is demanded.

5.      Denied. Strict proof thereof is demanded.

6.      Admitted.

7.      Denied.  It is specifically denied that jurisdiction is proper in this Court pursuant to 28 U.S.C. §1367.  To the contrary, complete diversity of the parties is absent because Aromatic Fusion is a citizen of New Jersey, the same state in which Plaintiff Paul Albee resides.

8.      Denied as stated.  To the extent that diversity exists to support the diversity jurisdiction of this Court, Defendants admit only that this Court has supplemental jurisdiction over the state law claims asserted in the Complaint pursuant to 28 U.S.C. §1367(a).

9.      Denied as stated.  To the extent that diversity exists to support the diversity jurisdiction of this Court, it is admitted that venue is proper in this Court since the alleged wrongs complained by Plaintiffs all occurred in within the Eastern District of Pennsylvania.

10.     Denied.  If any wrongs have been done by the Defendants, the Complaint purports that they were affected within the Eastern District of Pennsylvania, and therefore, Pennsylvania law must be applied.

11.     Denied.  While it is admitted that a jury trial has been requested for all causes of action set forth in the Complaint, it is specifically denied that a jury trial is available regarding all claims for injunctive relief and judicial statements of wrongdoing.

12.     Denied as stated.  It is admitted only that Aromatic Fusion is a supplier of concentrates, air care products, odor neutralizers, as well as custom compounding and development, additives and modifiers for plastics, and additive concentrates based thereon. It is

3

denied that it supplies other unnamed services and related services, and strict proof thereof is demanded.

13.    Denied. Strict proof thereof is demanded.

14.    Denied. Strict proof thereof is demanded.

15.    Denied as stated.  It is admitted only that Eric Albee is the majority shareholder of Aromatic Fusion and is the majority owner of fifty-one and one-half percent (51.5%) pf the outstanding stock of the Company.  It is additionally admitted that he has served as an officer and director of the Company.  Any remaining allegations of this paragraph 15 of Plaintiffs' Complaint are denied and strict proof thereof is demanded.

16.    Admitted in part; denied in part. It is admitted only that Eric Albee did live in New Jersey and worked at Aromatic Fusion's corporate headquarters in Bensalem, PA. The remaining allegations of this paragraph 16 of Plaintiffs' Complaint are denied and strict proof thereof is demanded.

17.    Denied as stated.  It is admitted only that in 2013 the Company experienced a small uptick in sales after two years of decline. The remaining allegations of this paragraph 17 of Plaintiffs' Complaint are denied and strict proof thereof is demanded.

18.    Denied. Strict proof thereof is demanded.

19.    Admitted

20.    Admitted in part; denied in part.  It is admitted only that there was an existing, revolving line of credit through Univest that was converted to a permanent loan backed by the SBA to enable the outstanding indebtedness to be paid down and the loan paid off.  The remaining allegations of this paragraph 20 of Plaintiffs' Complaint are denied and strict proof thereof is demanded.

21.    Denied. Strict proof thereof is demanded.

22.    Denied. Strict proof thereof is demanded.

23.    Denied. Strict proof thereof is demanded.

24.    Denied. Strict proof thereof is demanded.  By way of further response, contrary to the allegations in this paragraph 24 of the Plaintiffs' Complaint, aroma43 is not a corporate entity, but rather is a brand name employed for marketing purposes by Eric Albee and White Bear.

25.    Denied. Strict proof thereof is demanded.

26.    Admitted in part; denied in part.  It is admitted only that White Bear was formed in 2016.  The remaining allegations in this paragraph 26 of Plaintiffs' Complaint are denied and strict proof thereof is demanded.

27.    Admitted.

28.    Denied. Strict proof thereof is demanded.

29.    Denied. Strict proof thereof is demanded.

30.    Denied. Strict proof thereof is demanded.

31.    Denied. Strict proof thereof is demanded.

32.    Denied. Strict proof thereof is demanded.

33.    Denied. Strict proof thereof is demanded.

34.    Denied. Strict proof thereof is demanded.

35.    Denied. Strict proof thereof is demanded.

36.    Denied. Strict proof thereof is demanded.

37.    Denied. Strict proof thereof is demanded.

38.    Denied. Strict proof thereof is demanded.

39.     Admitted in part; denied in part.  It is admitted only that on August 9, 2019, Eric Albee resigned as a paid employee of Aromatic Fusion and remains a majority shareholder in the Company. The remaining allegations in this paragraph 39 of Plaintiffs' Complaint are denied and strict proof thereof is demanded.

40.     Denied. Strict proof thereof is demanded.

41.     Denied. Strict proof thereof is demanded.

42.     Denied.  It is admitted only that Eric sent a letter to Chevron Phillips dated November 23, 2020 to clarify the ownership of technology.  This letter is a writing and speaks for itself.  To the extent Plaintiffs' averments are contrary to this writing, Defendants deny the same. The remaining allegations in this paragraph 42 of this Plaintiffs' Complaint are denied and strict proof thereof is demanded.

43.     Denied. Strict proof thereof is demanded.

44.     Admitted in part; denied in part.  It is admitted only that Eric Albee was sent a letter dated March 18, 2021.  This letter is a writing and speaks for itself.  To the extent Plaintiffs' averments are contrary to this writing Defendants deny the same. The remaining allegations in this Paragraph 44 of Plaintiffs' Complaint are denied and strict proof thereof is demanded.

45.     Denied. The averment herein constitutes a conclusion of law to which no further response is required. To the extent any averment herein is deemed factual in nature, that averment is denied, and strict proof thereof is demanded.

**COUNT I**

46.     Defendants incorporate each and all of their responses in this Second Amended Answer as though fully set forth herein.

47.     Denied. The averments herein constitute conclusions of law to which no further response is required. To the extent any averment herein is deemed factual in nature, that averment is denied, and strict proof thereof is demanded.

48.     Denied. The averments herein constitute conclusions of law to which no further response is required. To the extent any averment herein is deemed factual in nature, that averment is denied, and strict proof thereof is demanded.

49.     Denied. The averments herein constitute conclusions of law to which no further response is required. To the extent any averment herein is deemed factual in nature, that averment is denied, and strict proof thereof is demanded.

50.     Denied. The averments herein constitute conclusions of law to which no further response is required. To the extent any averment herein is deemed factual in nature, that averment is denied, and strict proof thereof is demanded.

51.     Denied. The averments herein constitute conclusions of law to which no further response is required. To the extent any averment herein is deemed factual in nature, that averment is denied, and strict proof thereof is demanded.

WHEREFORE, Defendant Eric Albee respectfully requests an Order dismissing Count I of Plaintiffs' Complaint with prejudice, including an award of reasonable attorney's fees and costs of litigation to Defendant Eric Albee and the grant of such other and further relief as the Court deems fair and just.

## COUNT II

52.     Defendants incorporate each and all their responses in this Second Amended Answer as though fully set forth herein.

53.     Denied. The averments herein constitute conclusions of law to which no further response is required. To the extent any averment herein is deemed factual in nature, that averment is denied, and strict proof thereof is demanded.

54.     Denied. The averments herein constitute conclusions of law to which no further response is required. To the extent any averment herein is deemed factual in nature, that averment is denied, and strict proof thereof is demanded.

55.     Denied. The averments herein constitute conclusions of law to which no further response is required. To the extent any averment herein is deemed factual in nature, that averment is denied, and strict proof thereof is demanded.

56.     Denied. Strict proof thereof is demanded.

57.     Denied. Strict proof thereof is demanded.

WHEREFORE, Defendant Eric Albee respectfully requests an Order dismissing Count II of Plaintiffs' Complaint with prejudice, including an award of reasonable attorney's fees and costs of litigation to Defendant Eric Albee, and the grant of such other and further relief as the Court deems fair and just.

## COUNT III

58.     Defendants incorporate each and all of their responses in this Second Amended Answer as though fully set forth herein.

59.     Denied. The averments herein constitute conclusions of law to which no further response is required. To the extent any averment herein is deemed factual in nature, that averment is denied, and strict proof thereof is demanded.

60.     Denied. The averments herein constitute conclusions of law to which no further response is required. To the extent any averment herein is deemed factual in nature, that averment is denied, and strict proof thereof is demanded.

61.     Denied. The averments constitute conclusions of law to which no further response is required. To the extent any averment herein is deemed factual in nature, that averment is denied, and strict proof thereof is demanded.

62.     Denied. The averments herein constitute conclusions of law to which no further response is required. To the extent any averment herein is deemed factual in nature, that averment is denied, and strict proof thereof is demanded.

63.     Denied. Strict proof thereof is demanded.

64.     Denied. The averments herein constitute conclusions of law to which no further response is required. To the extent any averment herein is deemed factual in nature, that averment is denied, and strict proof thereof is demanded.

.        WHEREFORE, Defendant Eric Albee respectfully requests an Order dismissing Count III of Plaintiffs' Complaint with prejudice, including an award of reasonable attorney's fees and costs of litigation to Defendant Eric Albee, and the grant of such other and further relief as the Court deems fair and just.

## COUNT IV

65.     Defendants incorporate each and all of their responses in this Second Amended Answer as though fully set forth herein.

66.     Denied. Strict proof thereof is demanded.

67.     Denied. Strict proof thereof is demanded.

68.     Denied. Strict proof thereof is demanded.

69.     Denied. The averments herein constitute conclusions of law to which no further response is required. To the extent any averment herein is deemed factual in nature, that averment is denied, and strict proof thereof is demanded.

WHEREFORE, Defendant White Bear respectfully requests an Order dismissing Count III of Plaintiffs' Complaint with prejudice, including an award of reasonable attorney's fees and costs of litigation to Defendant White Bear, and the grant of such other and further relief as the Court deems fair and just.

## COUNT V

70.     Defendants incorporates each and all of their responses in this Second Amended Answer as though fully set forth herein.

71.     Denied. Strict proof thereof is demanded.

72.     Denied. Strict proof thereof is demanded.

73.     Denied. Strict proof thereof is demanded.

74.     Denied. Strict proof thereof is demanded.

75.     Denied. The averments herein constitute conclusions of law to which no further response is required. To the extent any averment herein is deemed factual in nature, that averment is denied, and strict proof thereof is demanded.

WHEREFORE, Defendant White Bear respectfully requests an Order dismissing Count V of Plaintiffs' Complaint with prejudice, including an award of reasonable attorney's fees and costs of litigation to Defendant White Bear and the grant of such other and further relief as the Court deems fair and just.

## AMENDED AFFIRMATIVE DEFENSES

1.      Plaintiffs' Complaint fails to state any cause of action upon which relief may be granted.

2.      The claims set forth in Plaintiffs' Complaint are barred in whole or in part by the doctrines of waiver, estoppel, and/or laches.

3.      The claims set forth in Plaintiffs' Complaint are barred in whole or in part by the applicable statutes of limitation

4.      The claims set forth in Plaintiffs' Complaint are barred in whole or in part by the doctrine of unclean hands.

5.      The claims set forth in Plaintiffs' Complaint are barred in whole or in part due to Plaintiffs' failure to mitigate their alleged damages, if any.

6.      The claims set forth in Plaintiffs' Complaint are barred in whole or in part by Plaintiffs' wrongful conduct.

7.      The claims set forth in Plaintiffs' Complaint are barred in whole or in part because Defendants' conduct did not and does not create tortious misconduct.

8.      Plaintiffs' equitable claims set forth in Plaintiffs' Complaint are barred in whole or in part because any alleged injury to Plaintiffs is not immediate or irreparable, and Plaintiffs have an adequate remedy at law.

9.      The claims set forth in Plaintiffs' Complaint are barred in whole or in part due to Plaintiffs' failure to plead their special damages, if any, with particularity.

10.     The claims set forth in Plaintiffs' Complaint are not personal to Plaintiff Paul Albee and are entirely derivative of rights, if any, belonging to Aromatic Fusion.

11.     Defendants hereby give notice to Plaintiffs that until Defendant avails itself of its right of discovery, it cannot determine whether any further and/or additional affirmative defenses will be necessary and/or appropriate in this matter, and they therefore reserve the right to add such other affirmative defenses as may become known to Defendants through the course of discovery and investigation of this matter.

WHEREFORE, Defendants respectfully request an Order dismissing Plaintiffs' Complaint with prejudice, including an award of reasonable attorney's fees and costs of litigation to Defendants, and each of them, and the grant of such other and further relief as the Court deems fair and just.

## JURY DEMAND

Defendants request a trial by jury of twelve (12) of the issues so triable herein.

Respectfully submitted,

**SPECTOR GADON ROSEN VINCI P.C.**

BY: /s/ *Alan B. Epstein*

**Alan B. Epstein, Esquire (02346)**
**Jennifer Myers Chalal, Esquire (77841)**
Seven Penn Center - 7th Floor
1635 Market Street
Philadelphia, PA  19103
215-241-8888
215-241-8844 (fax)
*aepstein@sgrvlaw.com*
*jchalal@sgrvlaw.com*
*Counsel for Defendants Eric Albee, Aromatic*
*Fusion and White Bear Trading Company, LLC*

Dated:  August 9, 2022

| | | |
|---|---|---|
| **ERIC ALBEE, Individually and on behalf of** | : | |
| **AROMATIC FUSION INC.** | : | **CIVIL ACTION NO.** |
| **Counterclaim Plaintiffs** | : | **No.  21-cv-3984 PBT** |
| **v.** | : | |
| **PAUL ALBEE** | : | **JURY TRIAL DEMANDED** |
| ~~**Counterclaim Defendant**~~ | : | |

## SECOND AMENDED COUNTERCLAIMS OF ERIC ALBEE INDIDUALLY AND ON BEHALF OF AROMATIC FUSION, INC. AGAINST PAUL ALBEE

### INTRODUCTION

1.     While the Complaint filed by Paul Albee purports to seek damages for averred wrongs to Paul Albee, it is, in fact, just a fictitious narrative of modified realities brought by a father against his son and his son's companies, not intended to seek a deserved resolution but rather one calculated to hide Paul Albee's own wrongdoing and gain full control and ownership of Aromatic Fusion, Inc. ("Aromatic Fusion" or the "Company").

2.     Throughout his employment with Aromatic Fusion, Counterclaim Defendant, minority shareholder Paul Albee has been in a powerful position to engage in, and has engaged in, nefarious acts against Aromatic Fusion for the sole purpose of personal gain and in the bad faith effort to gain full control of Aromatic Fusion.

3.     Willfully and maliciously, without justification or authorization, and in breach of his duty of loyalty to the Company, Counterclaim Defendant Paul Albee ("Paul"), aided and abetted by the equally wrongful actions of his wholly owned company, P3n Technology, Inc. ("P3n Technology"), his wife Mary Ann Albee ("Mary Ann") and his daughter Sandra Albee Keeley ("Sandra"), has engaged in theft of Company funds, resources and materials, interfered with customer relationships of Aromatic Fusion and misappropriated Company trade secrets.

13

4.      The present action is instituted under applicable federal and state common and statutory law to seek relief from Paul Albee's unlawful conduct in the form of monetary damages and injunctive relief.

## THE PARTIES

### Counterclaim Plaintiffs

5.      Counterclaim Plaintiff Aromatic Fusion is a corporate entity organized and existing under the laws of New Jersey with a principal place of business at 3185 Tucker Road, Bensalem, PA 19020.

6.      Counterclaim Plaintiff Eric Albee is the majority shareholder of Aromatic Fusion holding fifty-nine and one-half (59.5%) of the outstanding shares of the Company. The remaining outstanding shares in the amount of forty-nine and one half (40.5%) are held by Counterclaim Defendant Paul Albee.

7.      Eric Albee resides at 640 NW 28th Court, Wilton Manors, FL 33311.

8.      Aromatic Fusion was incorporated in 2003 and is a supplier of fragrances, air care products and air neutralizers, additives and modifiers for plastics, and additive concentrates.

### Counterclaim Defendant

9.      Counterclaim Defendant Paul Albee is an adult individual residing at 409 Sergeant Drive, Lambertville, New Jersey and has served in a principal operating role at Aromatic Fusion during all times applicable to the Counterclaims alleged herein.

## JURISDICTION AND VENUE

10.      Jurisdiction is invoked pursuant to 28 U.S.C. §1331 which provides for original jurisdiction of Counterclaim Plaintiffs' Counterclaims arising under the laws of the United States

14

and over actions to recover damages and to secure equitable and other relief under the appropriate governing statute.

11.     The Court is permitted to hear these Counterclaims brought pursuant to the Pennsylvania statutory and common law in accordance with its supplemental jurisdiction over state-based claims as set forth in the provisions of 28 U.S.C. § 1367(a).

12.     Pursuant to Rule 5.1.1 of the Local Rules of Civil Procedure of the United States District Court for the Eastern District of Pennsylvania, Counterclaim Plaintiffs aver only that the amount in controversy exceeds the arbitration jurisdictional amount of One Hundred Fifty Thousand Dollars ($150,000) exclusive of interest and costs.

13.     The actions complained of herein occurred within the jurisdiction of this Court and involve a defendant who regularly does business within its jurisdictional limits.

14.     Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. §§1391(b) and 1391(c).

## STATEMENT OF APPLICABLE FACTS

15.     In early 2020, Eric Albee discovered certain information regarding apparent wrong doing by Paul Albee which led him to initiate an investigation regarding various business activities engaged in by Paul affected with the aid of his daughter, Sandra, his wholly owned company, P3nTechnology, his wife Mary Ann and other non-party persons and entities.

16.     Based on the knowledge and information obtained through this investigation, Eric Albee reasonably believes and therefore avers, that with the assistance of the aforementioned individuals and entities, Paul engaged in wrongful behaviors without justification or authority including but not limited to breaches of fiduciary duty and loyalty, theft of corporate funds, misappropriation of trade secrets, interference with existing and potential vendor, customer and

supplier contracts and relationships, and the establishment of new, competing companies to usurp corporate opportunities.

16.     More specifically, as a result of the aforesaid investigation, Eric Albee discovered that beginning in or about August 2015 and continuing thereafter, Paul diverted payables belonging to Aromatic Fusion into the personal account he held individually or with jointly with Mary Ann and Sandra.

17.     These payments to Paul, Mary Ann and Sandra were made by SP Films/Vandir, SA de CV ("SP Films"), Plastics Lausa ("Plastics") and other customers of Aromatic Fusion and the payments were for work performed or products sold by Aromatic Fusion to those entities.

18.     Upon reasonable knowledge, information and belief, Paul diverted payments owed to Aromatic Fusion in an amount in excess of fifty-three thousand dollars ($53,000.00) to himself, Mary Ann and Sandra.

19.     As a further result of the aforementioned investigation, Eric Albee also discovered that beginning in or about early 2019 and continuing thereafter, Paul, on behalf of himself and/or P3n Technology solicited and thereafter entered into a consulting agreement with AVAPCO, LLC, a wholly owned subsidiary of Gran Bio Technologies ("AVAPCO/Gran Bio) regarding the drying and dispersion of nano-cellulose into plastics which was a confidential and proprietary process belonging to Aromatic Fusion.

20.     In addition to sharing the proprietary process, Paul also shared confidential and proprietary information regarding nano-cellulose with AVAPCO/Gran Bio including the materials used and percentages of each material.

21.     AVAPCO/Gran Bio was a prospective customer of Aromatic Fusion to develop nano-cellulose dispersions to integrate AVAPCO's products into plastics at the time the unlawful actions were taken.

22.     Eric Albee's investigation further led to knowledge that on May 18, 2018 and July 1, 2019, on behalf of himself and/or P3n Technology, Paul submitted two related patent applications for nano-particulate concentrations regarding the preparation of dry free-flowing nano-cellulose particulate that allows for the effective and maximum dispersion of nano-cellulose crystals,  nano-cellulose fibers and nano-cellulose whiskers based upon processes developed by and belonging to Aromatic Fusion.

23.     In furtherance of this pattern of stealing processes developed and owned by Aromatic Fusion,  P3n Technology, through Paul, published literature regarding Nano-Cellulose technology that was based on confidential materials and documents belonging to Aromatic Fusion.

24.     As a result of his investigation, Eric Albee also discovered that in 2019 Paul and P3n Technology soliciting the sale of products developed and owned by Aromatic Fusion to Chevron Phillips Chemical Company ("Chevron").

25.     Upon knowledge, information and belief, Paul and P3n Technology entered into a contract with Chevron to sell Aromatic Fusion products including but not limited to nano-crystalline processes.

26.     Chevron was a customer of Aromatic Fusion at the time and, upon information and belief, is no longer doing business with Aromatic Fusion.

27.     Eric also discovered through the ongoing investigation that Paul and P3n Technology began working with BOCO Bio-Nanotechnologies. Inc ("BOCO") in August 2019,

17

and thereafter set up the production of products made by using Aromatic Fusions' trade secrets regarding pre-dispersion additives for nano-cellulose fillers.

28. Boco was a customer of Aromatic Fusion at the time and, upon information and belief, is no longer doing business with Aromatic Fusion.

29. Eric's investigation also revealed that Sandra, who had resigned as a Company officer and sold her stock holdings to Eric and Paul, paid to Paul and Mary Ann instead of repaying Aromatic Fusion, reimbursements for money wrongfully appropriated from Aromatic Fusion in amounts totaling $61,160.00. Paul and Mary Ann then "loaned" some or all of that amount to Aromatic Fusion for repayment later to them.

30. These aforesaid nefarious, unlawful actions by Paul, Mary Ann land Sandra with respect to diverting Company funds to themselves, personally, caused previous serious cash flow issues that at one time led to White Bear to infusing capital into the Company in exchange for use of the Company's technology.

31. Eric Albee's investigation further uncovered that, in 2019 while Paul was fully engaged by Aromatic Fusion as a principal operator, he entered into a personal consulting contract with AVAPCO/Gran Bio, through its representative Kimberly Nelson ("Nelson"), to supply Aromatic Fusion trade secret processes to AVAPCO/Gran Bio.

32. As a result of that consulting contract, the investigation revealed that Paul worked for 18 or more months with AVAPCO/Gran Bio, earning at least $16,000/per month with the promise of substantial success bonuses for establishing business relationships for AVAPCO/Gran Bio with Phillips 66 and Chevron.

33.     Invoices for the work performed by Paul were submitted from Paul's home address and all payments for Paul's time were paid to Paul directly without compensation to Aromatic Fusion for his time or the trade secrets used.

34.     The aforesaid unlawful actions of the Counterclaim Defendants have and will continue to cause substantial damage to Counterclaim Plaintiffs Eric Albee and Aromatic Fusion.

35.     The unlawful actions of the Counterclaim Defendant were affected willfully and in callous disregard to the rights of the Counterclaim Plaintiffs, giving rise to and supporting a claim of exemplary damages and attorneys' fees.

## COUNT I

### BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY
### [Eric Albee and Aromatic Fusion Against Counterclaim Defendant Paul Albee]

36.     Eric Albee and Aromatic Fusion incorporate the allegations of the preceding paragraphs of this Counterclaim as though fully set forth herein.

37.     As a shareholder of Aromatic Fusion and having a principal operating role at Aromatic Fusion, Paul owed and continues to owe a fiduciary duty and duty of loyalty to the Company.

38.     Throughout the term of his engagement with the Company, Paul acted for his own interests as fully set forth above and engaged in actions against the direct interests of Eric Albee and the Company.

39.     To establish a breach of fiduciary duty under Pennsylvania law, a plaintiff must first establish that a "fiduciary or confidential relationship existed" between two parties. *Baker v. Fam. Credit Consulting Corp.*, 440 F. Supp.2d 392, 414-415 (E.D. Pa. 2006)(discussing that this relationship exists when someone is in a position "of advisor or counselor as reasonable to inspire confidence that he will act in good faith for the other's interests").

19

40.     Plaintiff must also establish the elements of the a breach of fiduciary duty: "(1) [t]hat the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) [t]hat plaintiff suffered injury; and (3) [t]he defendant's failure to act solely for the plaintiff's benefit was a real factor bringing about the plaintiff's injuries." *Id.*

41.     Pennsylvania law dictates that agents to a company owe that company a duty of loyalty. *Synthes, Inc. v. Emerge Med. Inc.,* 25 F. Supp.3d 617, 667 (E.D. Pa. 2014)(holding that an agents "specific duties of loyalty include a duty to refrain from competing with the principal and…a duty not to use property or confidential information of the principal for the agent's own purpose or those of a third party.").

42.     At all relevant times, a confidential relationship existed between Counterclaim Defendant Paul Albee and Aromatic Fusion based on Paul's role within the Company.

43.     Counterclaim Defendant Paul Albee breached his fiduciary duty of loyalty to Counterclaim Plaintiffs by entering utilizing proprietary information belonging to Aromatic Fusion regarding nano-cellulose processes and products and entering into personal contracts to provide services to AVAPCO /Gran Bio, Chevron and Boco that competed with Aromatic Fusions while in direct control of, engaged with and compensated by the Company.

44.     At all relevant times, AVAPCO/Gran Bio, Chevron and Boco were customers of Aromatic Fusion and Counterclaim Defendant Paul Albee actively engaged in diverting these customers from Aromatic Fusion while engaged with and receiving ~~substantial~~ compensation from Aromatic Fusion.

45.     Additionally, while engaged with Aromatic Fusion, and utilizing the Company's trade secrets regarding nano-cellulose processes, facilities and staff, Counterclaim Defendant

20

Paul Albee filed for and was granted patents in his sole name regarding the preparation of dry free-flowing nano-cellulose particulate that allows for the effective and maximum dispersion of nano-cellulose crystals, nano-cellulose fibers and nano-cellulose whiskers.

46.     Upon reasonable knowledge, information and belief, Counterclaim Defendant Paul Albee has used those patented systems, methods and processes, including inter alia two patents recently registered, to generate compensation from the sale and licensing of those patents to other corporate entities including but not limited to AVAPCO/GranBio, Chevron, and Boco.

47.     As a direct result of his wrongdoing, Counterclaim Defendant Paul Albee has deprived Counterclaim Plaintiffs of substantial compensation due and owing to them as well as causing Aromatic Fusion the loss of Company value, business opportunities, the advantages and opportunities of protected proprietary and trade secrets.

48.     Based upon Counterclaim Defendant Paul Albee's wrongdoing as aforesaid, he must be disqualified from sharing in any damages assessed against him and in favor of Aromatic Fusion as a matter of law.

## COUNT II

### TORTIOUS INTERFERENCE WITH
### EXISTING AND PROSPECTIVE CONTRACTUAL RELATIONSHIPS
### [Aromatic Fusion Against Counterclaim Defendant Paul Albee]

49.     Aromatic Fusion incorporates the allegations of the preceding paragraphs of this Counterclaim as though fully set forth herein.

50.     To establish a tortious interference with existing or prospective contract under Pennsylvania law, a plaintiff must show "(1) an actual or prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual

damages resulting from the defendant's conduct." *Perma-Liner Indus., Inc. v. U.S. Sewer & Drain, Inc.,* 630 F. Supp.2d 516, 524 (E.D. Pa. 2008).

51.     For a prospective contract, plaintiffs must establish "an objectively reasonable probability that a contract will come into existence." *Miffinburg Telegraph, Inc. v. Criswell,* 277 F. Supp.3d 750, 797 (M.D. Pa. 2017); *see also Gen. Sound Tel. Co. Inc. v. AT&T Comms., Inc.* 654 F. Supp. 1562, 1565 (E.D. Pa. 1987) (holding that an existing business relationship where an opportunity to bid on a contract existed is insufficient to be considered a prospective contract under Pennsylvania law).

52.     At all times relevant hereto, Aromatic Fusion had existing contractual relationships with AVAPCO/Gran Bio, Chevron and Boco.

53.     Counterclaim Defendant Paul Albee, by and through P3n Technology, directly and purposely interfered with the contractual relationships that Aromatic Fusion had with AVAPCO/Gran Bio, Chevron, and Boco by soliciting and entering into agreements to provide these entities with the services and products provided by Aromatic Fusion by using materials and processes belonging to Aromatic Fusion.

54.     Additionally, Aromatic Fusion had existing contractual relationships with SP Films and Plastiques Lausa that entitled them to money for work performed.

55.     Counterclaim Defendant Paul Albee, aided and abetted by Mary Ann and Sandra, directly and purposefully interfered with the contractual relationships that Aromatic Fusion had with SP Films and Plastiques Lausa by diverting the payables due to Aromatic Fusion into his personal bank account or accounts that he held jointly with Mary Ann and/or Sandra.

56.     In engaging in these actions, Counterclaim Defendant Paul Albee acted with the intent to cause harm to Aromatic Fusion, without justification or privilege.

57.     As a result of the aforesaid tortious actions by Counterclaim Defendant Paul Albee, Aromatic Fusion has been caused to suffer substantial damages including but not limited to loss of business from AVAPCO/Gran Bio, Chevron and Boco and the loss of funds owed to them by SP Films and Plastiques Lausa.

58.     Based upon Counterclaim Defendant Paul Albee's wrongdoing as aforesaid, he must be disqualified from sharing in any damages assessed against him and in favor of Aromatic Fusion as a matter of law.

## COUNT III

### EMBEZZLEMENT/FRAUDULENT CONVERSION
### [Eric Albee and Aromatic Fusion Against Counterclaim Defendant Paul Albee]

59.     Eric Albee and Aromatic Fusion incorporate the allegations of the preceding paragraphs of this Counterclaim as though fully set forth herein.

60.     Under Pennsylvania law, conversion is "the deprivation of another's right of property, use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." *Fenton v. Bulick*, 831 F. Supp.2d 755, 760 (E.D. Pa. 2011).

61.     Conversion can occur by "(1) acquiring possession of property with the intent to assert a right to it adverse to the owner; (2) transferring the property and therefore depriving the owner of control; (3) unreasonably withholding possession of the property from the one who has the right to it; and (4) misusing or seriously damaging the property in defiance of the owner's rights." *Id.*

62.     It is a crime under Pennsylvania law for a person to apply or dispose of property that has been entrusted to him as a fiduciary which he knows is unlawful and involves substantial

risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted.

63.     Pursuant to Pennsylvania case law, a conversion is widely understood as the deprivation of another's right of property in or use or possession of another's property or other interference therewith, without the owner's consent and without lawful justification. Restatement (2d) of Torts, §222A.

64.     A person may incur liability for conversion by unreasonably withholding possession from one who has the right to it.

65.     Aromatic Fusion had existing contractual relationships with SP Films and Plastiques Lausa that entitled them to money for work performed.

66.     Counterclaim Defendant Paul Albee, with the assistance of Mary Ann and Sandra, directly and purposely exercised control and deprived Aromatic Fusion of the funds owed to it by SP Films and Plastiques Lausa by diverting the payables belonging to Aromatic Fusion into his personal bank account or accounts that he held jointly with Mary Ann and/or Sandra.

67.     As a result of Counterclaim Defendant Paul Albee's  withholding of the payables due to Aromatic Fusion, the company has suffered damages including the loss of funds owed to them by SP Films and Plastiques Lausa.

68.     Based upon Counterclaim Defendant Paul Albee's wrongdoing as aforesaid, he is disqualified from sharing in any damages assessed against him and in favor of Aromatic Fusion as a matter of law.

## COUNT IV

## THE FEDERAL DEFENSE OF TRADE SECRETS ACT ("DTSA")
[Aromatic Fusion Against Counterclaim Defendant Paul Albee]

69.     Aromatic Fusion incorporates the allegations of the preceding paragraphs of this

~~Counterclaim as though fully set forth herein.~~

70.     To state a claim under the DTSA, which has a private right of action, plaintiffs

must show "(1) they own a trade secret and (2) that the defendant misappropriated the trade

secret." *Herley Indus., Inc. v. R. Cubed Eng'g, LLC*, 2021 WL 229322, at *3 (E.D. Pa. Jan. 22,

2021).

71.     The DTSA defines "trade secrets" as a wide variety of information for which reasonable

measures have been taken to keep [the information] secret, and which derives independent economic

value from not being generally known nor readily ascertainable through proper means to others who can

obtain economic value from its disclosure or use.

72.     The DTSA defines "misappropriation" as the improper" acquisition, disclosure or use of

such a trade secret and includes any action by persons who breach a duty of loyalty.

73.     At all times applicable to their claims, Aromatic Fusion took reasonable steps to keep its

developed and owned novel processes secret from outside individuals and entities.

74.     Aromatic Fusion's process regarding the preparation of dry free-flowing nano-

cellulose particulate that allows for the effective and maximum dispersion of nano-cellulose

crystals,  nano-cellulose fibers and nano-cellulose whiskers is a unique process from which

Aromatic Fusion derives independent economic value by not being known by others.

75.     Aromatic Fusion expended great sums of money and time in developing this

process and maintain its confidentiality including the material used.

25

76.     Accordingly, the process regarding the preparation of dry free-flowing nano-cellulose particulate that allows for the effective and maximum dispersion of nano-cellulose crystals, nano-cellulose fibers and nano-cellulose whiskers constitutes novel trade secrets under the DTSA.

77.     Upon reasonable information, knowledge and belief, Counterclaim Defendant Paul Albee misappropriated Aromatic Fusion's trade secrets regarding the process of nano-cellulose dispersion including sharing formula information that he knew was developed and/or owned and protected from disclosure by Aromatic Fusion and sold those trade secrets personally or by and through his wholly owned corporation, P3n Technology, Inc. to AVAPCO/Gran Bio, Chevron and Boco for his own substantial economic gain.

78.     Counterclaim Defendant Albee misappropriated and sold those trade secrets without the consent of Aromatic Fusion and, in doing so, increased the profits of Paul Albee and P3n Technology while decreasing the profits of Aromatic Fusion..

79.     The actions of Counterclaim Defendant Paul Albee were done intentionally or with gross neglect as to evince a reckless indifference by Counterclaim Defendant Albee of Aromatic Fusion's rights, and an entire want of care that raises the presumption that Counterclaim Defendant was conscious of the consequences of his carelessness.

80.     The willful and malicious nature of  Counterclaim Defendant Paul Albee's misappropriation entitles Eric Albee and Aromatic Fusion to reasonable attorney's fees, expenses, and costs.

81.     Further, based upon Counterclaim Defendant Paul Albee's wrongdoing as aforesaid, he must be disqualified from sharing in any damages assessed against him and in favor of Aromatic Fusion as a matter of law.

## COUNT V

### THE PENNSYLVANIA UNIFORM TRADE SECRETS ACT
### [Aromatic Fusion Against Counterclaim Defendant Paul Albee]

82.     Aromatic Fusion incorporates the allegations of the preceding paragraphs of this

Counterclaim as though fully set forth herein.

83.     As an alternative to the federal DTSA claim above,  misappropriation of a trade

secret by an employee is actionable in a civil proceeding in the Commonwealth of Pennsylvania.

*See* the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 P.S. § 5302.

84.     The Pennsylvania Uniform Trade Secrets Act defines "trade secrets" as:

> information, including a formula, drawing, pattern, compilation including a
> customer list, program, device, method, technique or process that:
>
> (1)   Derives independent economic value, actual or potential, from not being
> generally known to, and not readily ascertainable by proper means by, other persons
> who can gain economic value for its disclosure or use  for which "reasonable
> measures" have been taken "to keep [the information] secret," and which "derives
> independent economic value . . . from not being generally known" nor "readily
> ascertainable through proper means" to others "who can obtain economic value
> from [its] disclosure or use.
>
> (2)   Is the subject of efforts that are reasonable under the circumstances to
> maintain its secrecy.

85.     The PUTSA make its unlawful to misappropriate a trade secret by an

employee who had a duty to maintain its secrecy or limit its use.

86.     A complainant under PUTSA is entitled to recover damages for

misappropriation including actual damages, unjust enrichment or royalties for unauthorized

disclosure.

87.     Exemplary damages and attorneys' fees are available if willful and malicious

misappropriation exists.

88.     The process regarding the preparation of dry free-flowing nano-cellulose particulate that allows for the effective and maximum dispersion of nano-cellulose crystals, nano-cellulose fibers and nano-cellulose whiskers also constitutes a trade secret under the PUTSA because it is a unique method that derives independent economic value by not being known by others and Aromatic Fusion spends considerable time and money to protect its secrecy.

89.     Upon reasonable information, knowledge and belief, Counterclaim Defendant Paul Albee misappropriated Aromatic Fusion's trade secrets regarding the process of nano-cellulose dispersion including sharing formula information that he knew was developed and/or owned and protected from disclosure by Aromatic Fusion and sold those trade secrets personally or by and through his wholly owned corporation, P3n Technology, Inc. to AVAPCO/Gran Bio, Chevron and Boco for his own substantial economic gain.

90.     The aforesaid misappropriation of Counterclaim Defendant Paul Albee was made by a fiduciary of Aromatic Fusion in bad faith and for his personal economic gain without authorization by the Company.

91.     The aforesaid actions of Counterclaim Defendant Paul Albee were taken while he was a fiduciary of Aromatic Fusion, were willful and malicious and were affected as part of a pattern and practice by him throughout his relationship with the Company as a fiduciary, up to and including the present time.

92.     Counterclaim Defendant Paul Albee misappropriated and sold the aforementioned trade secrets without the consent of Aromatic Fusion and, in doing so, increased the profits of Paul Albee and P3n Technology while decreasing the profits of Aromatic Fusion.

93.     Based upon Counterclaim Defendant Paul Albee's wrongdoing as aforesaid, he must be disqualified from sharing in any damages assessed against him and in favor of Aromatic Fusion as a matter of law.

## COUNT VI

### [Corporate Dissolution of Aromatic Fusion]
### [Brought by Eric Albee]

94.     Aromatic Fusion incorporates the allegations of the preceding paragraphs of this Counterclaim as though fully set forth herein.

95.     In accordance with the provisions of 15 Pa.C.S.A. §1981, at the request of a shareholder, a court can order the dissolution of a corporation if the acts of individuals in control of the corporation are illegal or fraudulent, corporate assets are being misapplied, and it is beneficial to the interests of the innocent shareholders that the corporation be wound up and dissolved.  The statute provides in pertinent part:

> § 1981. Proceedings upon application of shareholder or director.
>
> (a) General rule. -- Upon application filed by a shareholder or director of a business corporation, the court may entertain proceedings for the involuntary winding up and dissolution of the corporation when any one of the following is made to appear:
>
> (1) The acts of the directors, or those in control of the corporation, are illegal, oppressive or fraudulent and that it is beneficial to the interests of the shareholders that the corporation be wound up and dissolved.
>
> (2) The corporate assets are being misapplied or wasted and that it is beneficial to the interests of the shareholders that the corporation be wound up and dissolved.

96.     As reflected in the above allegations, the wrongful and illegal actions of shareholder Paul Albee while he controlled the operations of the Company including his actions in purposely interfering with the contractual relationships that Aromatic Fusion had with AVAPCO/Gran Bio, Chevron, and Boco by soliciting and entering into agreements to provide

29

these entities with the services and products provided by Aromatic Fusion by using materials and processes belonging to Aromatic Fusion and his fraudulent actions in so doing combined with his diverting funds of the Company require that Counterclaim Defendant Paul Albee be removed as the operating shareholder of Aromatic Fusion and that the Company be dissolved.

97.     Counterclaim Defendant Paul Albee engaged in these oppressive actions and wasted corporate assets by diverting funds and sharing proprietary information with Aromatic Fusion customers for his own personal gain occurred while he was in a position of control at Aromatic Fusion.

98.     Based upon Counterclaim Defendant Paul Albee's wrongdoing as aforesaid, he must be disqualified from sharing in any damages assessed against him and in favor of Aromatic Fusion as a matter of law.

## **RELIEF REQUESTED**

WHEREFORE, and for the reasons set forth above, Eric Albee and Aromatic Fusion demand judgment in their favor and against the Counterclaim Defendant as follows:

A.     A declaration and judicial determination that the conduct of Paul Albee is and was unlawful under the cited state and federal laws and that he is precluded in the sharing of any monetary awards made for the benefit of Aromatic Fusion.

B.     An award to Aromatic Fusion of consequential, compensatory and punitive damages as allowed under the circumstances under all applicable laws of the Commonwealth of Pennsylvania and federal law;

C.     Award to Eric Albee of consequential, compensatory and punitive damages as allowed under the circumstances under all applicable laws of the Commonwealth of Pennsylvania and Federal law;

D.     Pursuant to the Answer and Affirmative Defenses to Plaintiffs' Complaint against Defendants, dismissal of that Complaint with prejudice;

E.     Award to Eric Albee and Aromatic Fusion, and each of them, of their attorneys' fees and costs pursuant to the applicable state and federal laws;

F.     Enjoin Paul Albee and his affiliates, agents, servants, employees, and all those persons and entities acting in concert with him, upon notice of such injunction, from engaging in further wrongful behavior:

G.     Order the dissolution of Aromatic Fusion and the distribution of its assets in accordance with the prohibition of Paul Albee sharing in any manner the results of his wrongdoing; and

K.     Provide to Counterclaim Plaintiffs of any other relief this Court deems appropriate and just.

**JURY DEMAND**

Counterclaim Plaintiffs request a trial by jury of eight (8) jurors of the issues so triable herein.

Respectfully submitted,

**SPECTOR GADON ROSEN VINCI, P.C.**

BY: /s/ *Alan B. Epstein*

**Alan B. Epstein, Esquire (02346)**
**Jennifer Myers Chalal, Esquire (77841)**
Seven Penn Center - 7th Floor
1635 Market Street
Philadelphia, PA  19103
215-241-8888/215-241-8844 (fax)
*aepstein@sgrvlaw.com*
*jchalal@sgrvlaw.com*
*Counsel for Counterclaimants,*
*Aromatic Fusion, Inc. and Eric Albee*

Dated:  August 9, 2022

| | | |
|---|---|---|
| AROMATIC FUSION INC. | : | |
|       **Third Party Plaintiffs** | : | **CIVIL ACTION NO.** |
|       **v.** | : | **21-cv-3984 PBT** |
| MARY ANN ALBEE | : | |
|     **and** | : | |
| ~~SANDRA ALBEE KEELEY~~ | : | |
|     **and** | : | |
| P3n TECHNOLOGY INC. | : | |
|       **Third Party Defendants** | : | |

## SECOND AMENDED THIRD-PARTY COMPLAINT OF ERIC ALBEE AND AROMATIC FUSION AGAINST P3n TECHNOLOGY, INC., SANDRA ALBEE KEELEY AND MARY ANN ALBEE

## INTRODUCTION

1.     As fully set forth in the Second Amended Counterclaims set forth above, throughout his employment with Aromatic Fusion, Counterclaim Defendant, minority shareholder Paul Albee ("Paul") has been in a powerful position to engage in, and has engaged in, nefarious acts against Aromatic Fusion for the sole purpose of personal gain and in the bad faith effort to gain full control of Aromatic Fusion.

2.     Willfully and maliciously, without justification or authorization, and in breach of his duty of loyalty to the Company, Counterclaim Defendant Paul Albee, aided by the equally wrongful actions of his wholly owned company, P3n Technology, Inc. ("P3n Technology"), his wife Mary Ann Albee ("Mary Ann") and his daughter Sandra Albee Keeley ("Sandra"), has engaged in theft of Company funds, resources and materials, interfered with customer relationships of Aromatic Fusion and misappropriated Company trade secrets.

3.     The Counterclaims of Eric Albee and Aromatic Fusion have been instituted under applicable federal and state common and statutory law to seek relief from Paul Albee's unlawful conduct in the form of monetary damages and injunctive relief.

## THE PARTIES

### Third Party Plaintiffs

4.      Aromatic Fusion is a corporate entity organized and existing under the laws of New Jersey with a principal place of business at 3185 Tucker Road, Bensalem, PA 19020.

5.      Aromatic Fusion was incorporated in 2003 and is a supplier of fragrances, air care products and air neutralizers, additives and modifiers for plastics, and additive concentrates.

6.      Eric Albee is the majority shareholder of Aromatic Fusion, holding fifty-one and one-half percent (51.5%) and is an individual residing at 640 NW 28th Court, Wilton Manors, FL 33311.

### Third-Party Defendants

7.      P3n Technology is a corporation wholly owned by Counterclaim Defendant Paul Albee, with its principal place of business at 409 Sergeant Drive, Lambertville, New Jersey 08530.

8.      Based upon reasonable knowledge, information and belief, P3n Technology has a single employee and shareholder, Paul Albee.

9.      Sandra Albee Keeley, who currently resides at 3204 Adams Court North, Bensalem, PA 19020, is an adult individual and is the daughter of Paul Albee.  At all times relevant to the allegations of this Complaint, Sandra Albee Keeley engaged in and profited from her own wrongful actions as averred herein and contributed to and aided and abetted the wrongful actions of her father as set forth in Counterclaim Plaintiff's Second Amended Counterclaim against Paul Albee filed herewith.

10.      Mary Ann Albee is an adult individual and is the wife of Paul Albee who currently resides with him at 409 Sergeant Drive, Lambertville New Jersey.  At all times relevant

to the allegations of this Complaint, Mary Ann Albee engaged in and profited from her own wrongful actions as averred herein and contributed to and aided and abetted the wrongful actions of her husband.

## JURISDICTION AND VENUE

11.     Jurisdiction is invoked pursuant to 28 U.S.C. §1331 which provides for original jurisdiction of Third-Party Plaintiffs' claims arising under the laws of the United States and over actions to recover damages and to secure equitable and other relief under the appropriate governing statute.

12.     The Court is permitted to hear the claims brought pursuant to the Pennsylvania statutory and common law in accordance with its supplemental jurisdiction over state claims as set forth in the provisions of 28 U.S.C. § 1367(a).

13.     Pursuant to Rule 5.1.1 of the Local Rules of Civil Procedure of the United States District Court for the Eastern District of Pennsylvania, Third-Party Plaintiffs aver only that the amount in controversy exceeds the arbitration jurisdictional amount of One Hundred Fifty Thousand Dollars ($150,000) exclusive of interest and costs.

14.     The actions complained of herein occurred within the jurisdiction of this Court and involve defendants who regularly do business within its jurisdictional limits.

15.     Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. §§1391(b) and 1391(c).

## STATEMENT OF APPLICABLE FACTS

16.     In early 2020, Eric Albee discovered certain information regarding Paul Albee which led him to initiate an investigation regarding various business activities engaged in by

Paul with the aid of his daughter, Sandra, his wholly owned company, P3nTechnology, his wife Mary Ann and other persons and entities.

17.     Based on the knowledge obtained through this investigation, Eric Albee gained reasonable knowledge, information and belief, and therefore avers that, with the assistance of the aforementioned individuals and entities, Paul engaged in wrongful behaviors without justification or authority including but not limited to breaches of fiduciary duty and loyalty, theft of corporate funds, misappropriation of trade secrets, interference with existing and potential vendor, customer and supplier contracts and relationships, and the establishment of new, competing companies to usurp corporate opportunities.

18.     More specifically, Eric Albee discovered that beginning in or about August 2015 and continuing thereafter, Paul diverted payables belonging to Aromatic Fusion into the personal account he held individually or with jointly with Mary Ann and Sandra with the full knowledge and agreement of his wife and daughter.

19.     These payables were made by SP Films/Vandir, SA de CV ("SP Films") and Plastiques Lausa ("Plastiques") who were customers of Aromatic Fusion and the payments were for work performed and/or product delivered by Aromatic Fusion to these entities.

20.     Upon reasonable knowledge, information and belief gained by Counterclaim Plaintiff Eric Albee through his investigation, Paul diverted payables owed to Aromatic Fusion in an amount in excess of fifty-three thousand dollars ($53,000.00).

21.     Additionally, Eric Albee discovered that beginning in or about early 2016 and continuing thereafter, Paul, on behalf of himself and/or P3n Technology solicited and thereafter entered into a consulting agreement with AVAPCO, LLC, a wholly owned subsidiary of Gran

35

Bio Technologies ("AVAPCO/Gran Bio) regarding the drying and dispersion of nano-cellulose into plastics which was a confidential and proprietary process belonging to Aromatic Fusion.

22.     In addition to sharing those proprietary processes, Paul also shared confidential and proprietary information regarding nano-cellulose with AVAPCO/Gran Bio including the materials used and percentages of each material.

23.     AVAPCO/Gran Bio was a customer of Aromatic Fusion at the time and, upon information and belief, is no longer doing business with Aromatic Fusion.

24.     The investigation further revealed that, on behalf of himself and/or P3n Technology, Paul submitted two patent application for Aromatic Fusion's trade secret regarding the preparation of dry free-flowing nano-cellulose particulate that allows for the effective and maximum dispersion of nano-cellulose crystals,  nano-cellulose fibers and nano-cellulose whiskers.

25.     The patented processes were developed by Aromatic Fusion and belonged to the Company.

26.     The investigation further provided information and documents that P3n Technology published literature regarding Nano-Cellulose technology that was based on confidential materials and documents belonging to Aromatic Fusion.

27.     It was also discovered through Eric's investigation that in 2019 Paul and P3n Technology solicited the sale of products developed and owned by Aromatic Fusion to Chevron Phillips Chemical Company ("Chevron").

28.     Upon information and belief, Paul and P3n Technology entered into a contract with Chevron to sell Aromatic Fusion products including but not limited to nano-crystalline dispersions.

29.     Chevron was a customer of Aromatic Fusion at the time and, upon information and belief, is no longer doing business with Aromatic Fusion.

30.     Likewise, it was discovered that Paul and P3n Technology began working with BOCO Bio-Nanotechnologies. Inc ("BOCO") in August 2019 and thereafter set up the production products made by using Aromatic Fusions' trade secrets regarding pre-dispersion additives for nano-cellulose fillers.

31.  Boco  was a customer of Aromatic Fusion at the time and, upon information and belief, is no longer doing business with Aromatic Fusion.

32.     Upon knowledge, information and belief gained through Eric's investigation, Paul has reimbursed himself for non-existing and/or fraudulent loans allegedly made to Aromatic Fusion in connection with using Company funds wrongly taken by Sandra and/or improper use by Sandra of Company credit cards and repaid by Sandra to Paul and Mary Ann who in turn used those very funds to loan money to the Company that in turn was later repaid to them.

33.     The aforesaid actions by Paul, Mary Ann and Sandra with respect to diverting Company funds have caused previous serious cash flow issues that at one time led to White Bear to infusing capital into the Company in exchange for use of the Company's technology.

34.     The aforesaid improper actions of the Third-Party Defendant have and will continue to cause substantial damage to Counterclaim Plaintiffs Eric Albee and Aromatic Fusion.

35.     The actions of the Third Part Defendants were affected willfully and in callous disregard to the rights of the Counterclaim Plaintiffs, giving rise to and supporting a claim of exemplary damages and attorneys' fees.

## COUNT I

### ENAGING IN WITH, ENABLING AND AIDING ABETTING THE BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY OF PAUL ALBEE
[Eric Albee and Aromatic Fusion Against Mary Ann Albee and Sandra Albee Keeley]

36.     Eric Albee and Aromatic Fusion incorporate the allegations of the preceding

paragraphs of their Second Amended Counterclaim and this Second Third-Party Complaint as

though fully set forth herein.

37.     Courts in Pennsylvania "have repeatedly relied on § 876 in civil claims for aiding

and abetting claims." *See Linde v. Linde*, 220 A.3d 1119, 1145 (Pa. Super. Ct. 2019) (applying §

876 to claim against company directors for aiding and abetting majority shareholder's breach of

his fiduciary duty to a minority shareholder); *HRANEC Sheet Metal, Inc. v. Matlico Pittsburgh,*

*Inc.*, 107 A.3d 114, 120 (Pa. Super. Ct. 2014) (holding that "a concerted tortious conduct claim

[under § 876] is a viable cause of action in Pennsylvania"); *Sovereign Bank v. Valentino*, 914

A.2d 415, 427 (Pa. Super. Ct. 2006) ("Based upon the foregoing, we hold that concerted tortious

action, as defined in Section 876 of the Restatement (Second) of Torts, is a recognized civil

cause of action under Pennsylvania law."); *McCowan et al  v. City of Philadelphia*, Civil Action

No. 19-3326, 2022 WL 742687 at *33 (E.D .Pa. March 10, 2022) (aiding and abetting claims

allowed in the context of discrimination allegations).  Courts in other jurisdictions have also

adopted that aiding and abetting reasoning under their anti-discrimination laws. *See Matthews v.*

*Eichorn Motors, Inc.*, 800 N.W.2d 823, 830 (Minn. Ct. App. 2011); *Larry v. Marion Cnty Coal*

*Co.*, 302 F. Supp. 3d 763, 777 (N.D. W.V. 2018); *Lovell v. United Airlines, Inc.*, No. CIV. 09-

00146 ACK-LE, 2009 WL 3172729, at *3–4 (D. Hi. 2009)

38.     As contained in the comments to § 876(b), the Court may consider the following

factors in determining whether substantial assistance has been provided for purposes of aiding

and abetting: the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other, and his state of mind.

39.     Upon information and belief, Third Party Defendants Mary Ann and Sandra knowingly permitted Counterclaim Defendant to divert funds due and owing to Aromatic Fusion and placed those funds in jointly held accounts for the use by Paul and Third-Party Defendants Mary Ann and Sandra.

40.     Upon information and belief, Third Party Defendant Sandra also wrongful removed funds from the Company and thereafter permitted Second Counterclaim Defendant Paul Albee to improperly treat this removal as a loan which he thereafter reimbursed himself even though no loan was ever made.

41.     Based on the aforementioned facts, the Third-Party Defendants Mary Ann and Sandra engaged in with, enabled, aided, and abetted the wrongful actions of Paul Albee throughout the term of his engagement with the Company for his own interests apart from those of Eric Albee and Aromatic Fusion. *See* Restatement (Second) of Agency § 394 .

42.     The Third-Party Defendants Mary Ann and Sandra also engaged in their own wrongful actions and knowingly enabled and aided and abetted Paul Albee to breach his fiduciary duty of loyalty to Eric Albee and Aromatic Fusion by entering into personal contracts with Company's customers to provide competing services and diverted customers while he directly controlled, was employed with and was compensated by the Company.

43.     Additionally, upon information and belief, the Third-Party Defendants Mary Ann and Sandra engaged in their own wrongful conduct and enabled and aided and abetted the wrongful actions of Paul Albee to file for and get grants for patents in his sole name and on reasonable, knowledge, information and belief, Paul Albee has used those patented systems,

39

methods and processes to generate compensation from the sale and licensing of those patents to other corporate entities.

44.     As a direct result of this wrongdoing, Mary Ann and Sandra have aided and abetted Paul Albee to deprive Eric Albee and Aromatic Fusion of substantial compensation due and owing to them.

## COUNT II

### TORTIOUS INTERFERENCE WITH
### EXISTING AND PROSPECTIVE CONTRACTUAL RELATIONSHIPS
**[Aromatic Fusion Against Mary Ann Albee and Sandra Albee Keely]**

45.     Aromatic Fusion incorporates the allegations of the preceding paragraphs of his Counterclaim and this Third-Party Complaint as though fully set forth herein.

46.     At all times relevant hereto, Aromatic Fusion had existing contractual relationships with SP Films and Plastics that entitled them to money for work performed.

47.     Upon information and belief, Third Party Defendants Sandra and Mary Ann knew about these contractual relationships.

48.     Counterclaim Defendant Paul Albee, with the assistance and aid of Mary Ann and Sandra, directly and purposely interfered with the contractual relationships that Aromatic Fusion had with SP Films and Plastiques by diverting the payables due to Aromatic Fusion into his personal bank account or accounts that he held jointly with Mary Ann and/or Sandra.

49.     In engaging in these actions, Third Party Defendants Mary Ann and Sandra acted with the intent to cause harm to Aromatic Fusion, without justification or privilege.

50.     As a result of the aforesaid tortious actions by Third Party Defendants Mary Ann and Sandra, Aromatic Fusion has been caused to suffer substantial damages including but not limited the loss of funds owed to them by SP Films and Plastics.

## COUNT III

### EMBEZZLEMENT/FRAUDULENT CONVERSION
**[Eric Albee and Aromatic Fusion Against Sandra Albee Keeley and Mary Ann Albee]**

51.     Eric Albee and Aromatic Fusion incorporate the allegations of the preceding paragraphs of their Counterclaim and this Third-Party Complaint as though fully set forth herein.

52.     As fully set forth above and in the Second Amended Counterclaims filed herewith, based upon reasonable knowledge, information and belief, the Third-Party Defendants Sandra and Mary Ann embezzled, converted and made use of those Company funds and that property for their individual and collective personal gain, all to the detriment of the Third-Party Plaintiffs herein.

53.     Aromatic Fusion had existing contractual relationships with SP Films and Plastics that entitled them to money for work performed.

54.     Mary Ann and Sandra, together with Counterclaim Defendant Paul Albee directly and purposely exercised control and knowingly deprived Aromatic Fusion of the funds owed to it by SP Films and Plastiques by diverting the payables belonging to Aromatic Fusion into his personal bank account or accounts that he held jointly with Mary Ann and/or Sandra.

55.     As a result of Third-Party Defendants Mary Ann's and Sandra's actions in aiding and abetting Counterclaim Defendant Paul Albee's actions in withholding of the payables due to Aromatic Fusion, the company has suffered damages including the loss of funds owed to them by SP Films and Plastiques.

## COUNT IV

### THE FEDERAL DEFENSE OF TRADE SECRETS ACT ("DTSA")
**[Aromatic Fusion Against P3n Technology, Inc.]**

56.     Aromatic Fusion incorporates the allegations of the preceding paragraphs of this Third-Party Complaint as though fully set forth herein.

41

57.     The DTSA defines "trade secrets" as a wide variety of information for which reasonable measures have been taken to keep [the information] secret, and which derives independent economic value from not being generally known nor readily ascertainable through proper means to others who can obtain economic value from its disclosure or use.

58.     The DTSA defines "misappropriation" as the improper" acquisition, disclosure or use of such a trade secret and includes any action by persons who breach a duty of loyalty.

59.     Aromatic Fusion's process regarding the preparation of dry free-flowing nano-cellulose particulate that allows for the effective and maximum dispersion of nano-cellulose crystals,  nano-cellulose fibers and nano-cellulose whiskers is a unique process from which Aromatic Fusion derives independent economic value by not being known by others.

60.     Aromatic Fusion expended great sums of money and time in developing this process and maintain its confidentiality including the material used.

61.     Accordingly, the process regarding the preparation of dry free-flowing nano-cellulose particulate that allows for the effective and maximum dispersion of nano-cellulose crystals,  nano-cellulose fibers and nano-cellulose whiskers constitutes a trade secret under the DTSA.

62.     Upon information and belief, Third Party Defendant P3n Technology, as controlled by Paul,  knew that this process was a trade secret belonging to Aromatic Fusion.

63.     Upon reasonable information, knowledge and belief, P3n Technology assisted Counterclaim Defendant Paul Albee to misappropriate Aromatic Fusion's trade secrets regarding the process of nano-cellulose dispersion including sharing formula information that he knew was developed and/or owned and protected from disclosure by Aromatic Fusion and sold those trade secrets personally or by and through his wholly owned corporation, P3n Technology, Inc. to AVAPCO/Gran Bio, Chevron and Boco for his own substantial economic gain.

64.     In doing so, Third-Party Defendant assisted, aided and abetted Counterclaim Defendant Paul Albee in increasing his profits and the profits of P3n Technology while decreasing the profits of Aromatic Fusion..

65.     The actions of Third-Party Defendant P3n Technology in assisting, aiding and abetting Counterclaim Defendant Paul Albee were done intentionally or with gross neglect as to evince a reckless indifference by of Aromatic Fusion's rights, and an entire want of care that raises the presumption that Third-Party Defendant was conscious of the consequences of its actions.

66.     The willful and malicious nature of Third-Party Defendant P3n Technology's assistance with the misappropriate of Aromatic Fusion's trade secrets entitles Eric Albee and Aromatic Fusion to reasonable attorney's fees, expenses, and costs.

## COUNT V

## THE PENNSYLVANIA UNIFORM TRADE SECRETS ACT
### [Aromatic Fusion Against P3n Technology, Inc.]

67.     Aromatic Fusion incorporates the allegations of the preceding paragraphs of the Counterclaim and Third-Party Complaint as though fully set forth herein.

68.     As an alternative to the federal DTSA claim above,  misappropriation of a trade secret by an employee is actionable in a civil proceeding in the Commonwealth of Pennsylvania. *See* the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 P.S. § 5302.

69.     The process regarding the preparation of dry free-flowing nano-cellulose particulate that allows for the maximum dispersion of nano-cellulose crystals,  nano-cellulose fibers and nano-cellulose whiskers constitutes a trade secret under the DTSA.

70.     Upon information and belief, Third Party Defendant P3n Technology knew that this process was a trade secret belonging to Aromatic Fusion.

71.     Upon reasonable information, knowledge and belief, P3n Technology assisted, aided and abetted Counterclaim Defendant Paul Albee to misappropriate Aromatic Fusion's trade secrets regarding the process of nano-cellulose dispersion including sharing formula information that he knew was developed and/or owned and protected from disclosure by Aromatic Fusion and sold those trade secrets personally or by and through his wholly owned corporation, P3n Technology, Inc. to AV APCO /Gran Bio, Chevron and Boco for his own substantial economic gain.

72.     In doing so, Third-Party Defendant P3n Technology assisted, aided and abetted Counterclaim Defendant Paul Albee in increasing his profits and the profits of P3n Technology while decreasing the profits of Aromatic Fusion..

73.     The aforesaid misappropriation of trade secrets by P3n Technology was made for its personal economic gain without authorization by the Company.

74.     The aforesaid actions of P3n Technology were willful and malicious and were affected as part of a pattern and practice by Paul Albee throughout his relationship with Aromatic Fusion, up to and including the present time.

## **RELIEF REQUESTED**

WHEREFORE, and for the reasons set forth above, Aromatic Fusion and Eric Albee demand judgment in their favor and against the Defendants herein and each of them as follows:

A.     A declaration and judicial determination that the conduct of P3n Technology Albee is and was unlawful under the cited state and federal laws;

B.     A declaration and judicial determination that the conduct of Sandra Albee Keeley is and was unlawful under the cited state law;

44

C.    A declaration and judicial determination that the conduct of Mary Ann Albee is and was unlawful under the cited state law;

D.    Awarding to Aromatic Fusion consequential, compensatory and punitive damages as allowed under the circumstances under all applicable laws of the Commonwealth of Pennsylvania and Federal law;

E.    Awarding to Eric Albee consequential, compensatory and punitive damages as allowed under the circumstances under all applicable laws of the Commonwealth of Pennsylvania and Federal law;

F.    Awarding to Aromatic Fusion, Eric Albee, and each of them, their attorneys' fees and costs pursuant to the applicable state and federal laws;

G.    Entering an injunction to restrain Paul Albee and the Third-Party Defendants herein, and their affiliates, agents, servants, employees, and all those persons and entities acting in concert with him, upon notice of such injunction, from engaging in further wrongful behavior; and

H.    Providing to Third-Party Plaintiffs any other relief this Court deems appropriate and just.

## **JURY DEMAND**

Third-Party Plaintiffs request a trial by jury of eight (8) of the issues so triable herein.

Respectfully submitted,

**SPECTOR GADON ROSEN VINCI, P.C.**

BY: /s/ *Alan B. Epstein*

**Alan B. Epstein, Esquire (02346)**
**Jennifer Myers Chalal, Esquire (77841)**
Seven Penn Center - 7th Floor
1635 Market Street
Philadelphia, PA  19103
215-241-8888
215-531-9103 (fax)
*aepstein@sgrvlaw.com*
*jchalal@sgrvlaw.com*
*Counsel for Third-Party Plaintiffs,*
*Aromatic Fusion, Inc. and Eric Albee*

Dated:  August 9, 2022

## CERTIFICATE OF SERVICE

I, Alan B. Epstein, Esquire, hereby certify that a copy of the Amended Answer to Complaint with Amended Affirmative Defenses, the Second Amended Counterclaims and the Second Amended Third-Party Complaint was served upon all counsel of record via the Court's ECF system as follows:

Steven C. Goldblum, Esquire
Michael Torcia, Esquire
SEMANOFF ORMSBY GREENBER & TORCIA
2617 Huntingdon Pike
Huntingdon Valley, PA  19006
*Attorneys for Plaintiff*

SPECTOR GADON ROSEN VINCI, P.C.

BY: /s/ *Alan B. Epstein*

Alan B. Epstein, Esquire (02346)

*Counsel for Third-Party Plaintiffs,*
*Aromatic Fusion, Inc. and Eric Albee*

Dated:  August 9, 2022